938 F.2d 383
 60 USLW 2040, 13 Employee Benefits Ca 2425
 Kenneth J. ROSA, Brian O'Connor, Gerald L. Negri, Herbert J.
Kupfer, Priscilla Carpenter, Individually, and on Behalf of
All Participants and Beneficiaries of the City Savings Bank,
F.S.B., Minimum Benefit Retirement Plan (formerly, the "City
Federal Savings Bank Minimum Benefit Retirement Plan")
v.
RESOLUTION TRUST CORPORATION, in its Corporate Capacity, and
as Receiver of City Federal Savings Bank, as Receiver of
City Savings Bank, F.S.B. and as Conservator for City
Savings, F.S.B., City Federal Savings Bank; Manufacturers
Hanover Trust Company, a New York Corporation, City Savings,
F.S.B. ("City Savings"), City Savings Bank, F.S.B. ("City
Savings Bank"),
Pension Benefit Guaranty Corporation, Intervenor,
Resolution Trust Corporation, City Federal Savings Bank,
City Savings Bank, F.S.B., and City Savings,
F.S.B., Appellants.
 No. 90-6010.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 11, 1991.
Further Briefing Completed April 1, 1991.
Decided June 27, 1991.
 
 Roger B. Kaplan (argued), Laura V. Studwell, Richard B. Robins, Wilentz, Goldman & Spitzer, Woodbridge, N.J., for appellees Kenneth J. Rosa, Brian O'Connor, Gerald L. Negri, Herbert J. Kupfer and Priscilla Carpenter, individually and on behalf of all participants, etc.
 Dennis S. Klein (argued), Robert P. Fletcher, Hopkins & Sutter, Washington, D.C., Arthur Meisel, Ann F. Kiernan, Jamieson, Moore, Peskin & Spicer, Princeton, N.J., for appellants.
 Sarah L. Reid, Kelley, Drye & Warren, New York City, for appellee Mfrs. Hanover Trust Co.
 Carol Connor Flowe, Jeanne K. Beck, Deborah West (argued), Deborah J. Bisco, Pension Benefit Guar. Corp., Washington, D.C., for intervenor Pension Benefit Guar. Corp.
 Before STAPLETON, GREENBERG and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Defendants Resolution Trust Corporation, City Federal Savings Bank, City Savings Bank, F.S.B., and City Savings, F.S.B. ("appellants") appeal the order of the district court granting plaintiffs, participants in and beneficiaries of a pension plan, a preliminary injunction. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1292(a)(1) (1988). We review for abuse of discretion. Tustin v. Heckler, 749 F.2d 1055, 1060 (3d Cir.1984). However, our review of legal issues is plenary. Id.
 
 
 2
 Plaintiffs' complaint invoked the jurisdiction of the district court under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. Secs. 1001 et seq. (1988) ("ERISA"). The Resolution Trust Corporation ("RTC") challenges the district court's jurisdiction over plaintiffs' claims against appellants other than it in its corporate capacity for plaintiffs' failure first to comply with statutory claims procedures. See 12 U.S.C.A. Sec. 1821(d)(3)-(13) (West 1989).
 
 
 3
 This case involves important issues as to the meaning of certain provisions of the Financial Institutions Reform and Recovery Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73, 103 Stat. 183 (1989) (codified at various locations in the United States Code) in the context of claims brought under ERISA. Congress recently enacted FIRREA as a response to the crisis in the savings and loan industry that has commanded so much public attention in recent years. For example, the insurance system backing the industry was in financial danger and public confidence in the industry suffered. FIRREA's numerous and complex provisions seek to remedy the problems Congress perceived to result from the existing regulatory scheme. See H.Rep. No. 101-54(I), 101st Cong., 1st Sess. 291-312, reprinted in 1989 U.S.Code Cong. & Admin.News 86, 87-108 (detailing history and purposes of FIRREA).
 
 
 4
 One of FIRREA's purposes was "[t]o establish a new corporation, to be known as the Resolution Trust Corporation, to contain, manage, and resolve failed savings associations." 12 U.S.C.A. Sec. 1811 note (West 1989). RTC was created by section 501(b) of FIRREA, 12 U.S.C.A. Sec. 1441a(b) (West Supp.1991), which also defines its duties, powers, make-up and functions. RTC in large part took over the role of the Federal Savings and Loan Insurance Corporation ("FSLIC") with respect to failing insured savings and loan institutions. See id. Sec. 1441a(b)(3)(A), (6), (11)(B). Broadly stated, this case involves the functioning of RTC.
 
 I. FACTS
 
 5
 Plaintiffs are participants in and beneficiaries of the City Savings Bank, F.S.B., Minimum Retirement Benefit Plan (originally the City Federal Savings Bank Minimum Benefit Retirement Plan) ("plan"). This plan was created in 1985 and was subject to ERISA. The plan's trustee is Manufacturer's Hanover Trust Company ("trustee").
 
 
 6
 On December 7, 1989, the Director of the Office of Thrift Supervision ("OTS") issued a series of orders. First the Director appointed RTC receiver for City Federal Savings Bank ("City Federal") for the purpose of liquidation pursuant to its authority under 12 U.S.C.A. Sec. 1464(d)(2)(H)(ii) (West Supp.1991).[1] The Director next, upon RTC's application under 12 U.S.C.A. Sec. 1821(d)(2)(F)(i) (West 1989), authorized RTC's organization of City Savings Bank, F.S.B. ("City Savings Bank"), and issued a charter under Sec. 1464(a)(2). The Director then appointed RTC conservator for City Savings Bank pursuant to Sec. 1464(d)(2)(B)(i) effective upon RTC's consent of such appointment on behalf of City Savings Bank.
 
 
 7
 On December 8, under a Purchase and Assumption agreement between RTC as receiver for City Federal and City Savings Bank, RTC as receiver transferred certain City Federal assets and liabilities to City Savings Bank. Many City Federal employees were hired by City Savings Bank.
 
 
 8
 As a means of encouraging employees to remain with City Savings Bank, RTC as conservator determined that it would assume and continue the plan. This is a critical event because the issues presented arise out of that action and subsequent events. In its capacity as conservator RTC represented to City Savings Bank employees that it assumed the plan, and the record contains numerous references to such communications. On February 9, 1990, RTC as conservator and the trustee executed an amendment of the trust agreement to reflect the assumption. Further, on February 12, RTC as conservator formally assumed the plan effective December 8, 1989, replacing by amendment all references to City Federal with references to City Savings Bank. In all other respects the plan remained in "full force and effect." The Pension Benefit Guaranty Corporation ("PBGC") was notified of the assumption and amendment.[2]
 
 
 9
 City Savings Bank, through RTC as conservator, made two contribution payments to the trustee as they became due in January and April of 1990. Consistent with the assumption of the plan, participants continued to accrue rights and to have them vest, and the trustee continued to pay benefits.
 
 
 10
 The record reflects that sometime during the spring or summer of 1990, RTC as conservator began to consider terminating the plan. In July the conservator's managing agent's committee met to discuss its options with respect to the plan. Minutes of the committee's July 5 meeting recite that the committee approved the proposal "to freeze participant benefit accruals." Minutes of the July 12 meeting note that "[t]he Committee unanimously concurred to return the Plan to the Receivership."
 
 
 11
 On July 13, 1990, Timothy O'Neill, RTC's attorney working on-site at City Savings Bank, instructed Jeffrey Kaplowitz, the plan administrator[3] and an employee of City Savings Bank, not to make the July contribution to the trustee. No further contributions were made by any party.
 
 
 12
 On July 18, 1990, Mr. O'Neill instructed Mr. Kaplowitz to distribute a notice of plan termination to plan participants. This notice, delivered on July 19, was directed to participants of the City Federal plan and stated that it was from RTC as receiver for City Federal. The notice stated that "the Conservator was prevented from assuming the Plan by applicable law, including 12 C.F.R. Sec. 563.47."[4] Further, the notice stated that all benefits ceased accruing as of December 7, 1989 (the date RTC initially took over), and that the expected termination date of the plan was September 20, 1990.
 
 
 13
 On September 19, 1990, RTC, as receiver for City Federal, sent PBGC formal notice of its intention to terminate. That notice did not mention the assumption, but stated that "[i]n connection with the receivership, the RTC as receiver for City Federal intends to file for a distress termination of the City Federal Savings Bank Minimum Benefit Retirement Plan...." Further, the notice identified City Federal as plan administrator.[5]
 
 
 14
 On September 21, 1990, the Director of OTS issued another series of orders. The Director first replaced the conservator of City Savings Bank with RTC as receiver for the purpose of liquidation, pursuant to 12 U.S.C.A. Sec. 1464(d)(2)(F) and (H)(ii). Next, based on RTC's application under Sec. 1821(d)(2)(F)(i), the Director authorized RTC's organization of a new bank, City Savings, F.S.B. ("City Savings"), and issued a charter under Sec. 1464(a)(2). The Director then appointed RTC conservator for City Savings, effective upon RTC's consent, under Sec. 1464(d)(2)(B)(i). On the same day, pursuant to a Purchase and Assumption Agreement between RTC as receiver for City Savings Bank and City Savings, City Savings Bank transferred certain assets and liabilities to City Savings.
 
 
 15
 On November 6, 1990, plaintiffs brought this class action in the United States District Court for the District of New Jersey.[6] Named as defendants were RTC in its various capacities (corporate capacity, receiver for both City Federal and City Savings Bank, and conservator for City Savings), City Federal, City Savings Bank, City Savings and the trustee.
 
 
 16
 The complaint contained seven "counts." Relevant to this appeal are the following: (1) City Savings Bank failed to make contributions to the plan and threatened wrongfully to terminate it on a retroactive basis without 100% vesting in violation of the plan and ERISA, 29 U.S.C. Secs. 1053 and 1082; (2) RTC and City Savings Bank violated their fiduciary obligations under ERISA, 29 U.S.C. Sec. 1104; (3) RTC and City Savings Bank breached the trust agreement and plan; (4) RTC and City Savings Bank induced plaintiffs justifiably and detrimentally to rely on assurances with respect to the plan; and (5) City Savings was created as a "sham" to avoid certain obligations under the plan and FIRREA.[7]
 
 
 17
 Plaintiffs sought judgment (1) adjudging and declaring that RTC, City Savings Bank and City Savings acted wrongfully, (2) preliminarily and permanently enjoining those defendants from retroactively terminating the plan, (3) ordering those defendants to make all contributions due and owing, as well as future contributions when they became due, to the trustee. Plaintiffs also requested compensatory and punitive damages, costs and fees, and "other and further relief as the Court deems just and proper."[8]
 
 
 18
 On December 5, 1990, the district court issued its opinion and order granting a preliminary injunction against appellants. Rosa v. Resolution Trust Corp., 752 F.Supp. 1231 (D.N.J.1990). The court's December 5 order was amended on December 10, nunc pro tunc to December 5. The December 10 order (1) enjoined appellants from "taking any further action to terminate the [plan], or from taking any other action which would prejudice or adversely affect the rights of participants and beneficiaries of the Plan," (2) enjoined appellants from "sending or filing any further documents with [any governmental agency] for the purpose of terminating the Plan," (3) ordered appellants to pay contributions due and owing, totaling over two and one-half million dollars, to the trustee and (4) ordered appellants to continue to make all future contributions on a timely basis as required by the plan. Appellants filed a timely notice of appeal.[9]II. DISCUSSION
 
 
 19
 A few preliminary matters must be noted. First, the district court's order runs against and is appealed by RTC, City Federal, City Savings Bank and City Savings. Although only RTC filed a brief which it labeled "Brief of Appellant Resolution Trust Corporation," the parties before us have assumed that RTC speaks for all appellants. We shall do likewise. Therefore, any reference in this opinion to a contention made by RTC shall be deemed to be on behalf of the parties entitled to make such arguments.
 
 
 20
 Second, the parties agree that the takeover by a government agency did not alter the private character of the plan and we shall proceed on that basis.
 
 
 21
 Finally, we note that plaintiffs labor, as did the district court, under the misconception that the plan was, or was attempted to be, retroactively terminated. This is inconsistent with the record before us because the notice of termination contained a future date for termination of the plan and a retroactive date for the termination of benefits. This subtle distinction is important because benefits and plan termination are separate legal concepts under ERISA and involve separate rights. See, e.g., 29 U.S.C. Secs. 1002 (defining plans subject to ERISA as those providing certain benefits); 1025 (reporting participant benefit rights); 1054-1056 (vesting, accrual and payment provisions for pension benefits); 1132(a)(1)(B) (action to recover benefits); 1341-1368 (procedure and liability respecting plan termination). We do not intend, however, to imply that termination and benefits are wholly separate and distinct, see, e.g., id. Sec. 1322 (benefits guaranteed by PBGC at termination), but to emphasize the distinction for the purposes of clarity.
 
 
 22
 A. SUBJECT MATTER JURISDICTION OF THE DISTRICT COURT
 
 
 23
 We are met at the outset by the contention of RTC that the district court lacked subject matter jurisdiction to entertain plaintiffs' claims, except those against RTC in its corporate capacity. RTC argues that plaintiffs failed to exhaust FIRREA's claims procedures under 12 U.S.C.A. Sec. 1821(d)(3)-(13) (West 1989).[10] RTC relies specifically on Sec. 1821(d)(13)(D), which provides as follows:
 
 
 24
 Except as otherwise provided in this subsection, no court shall have jurisdiction over--
 
 
 25
 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
 
 
 26
 (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.
 
 
 27
 Both plaintiffs and PBGC contend, although for different reasons, that the above provision does not apply to plaintiffs' claims. Plaintiffs argue, based on the district court's ruling, that the jurisdictional bar applies only to "pre-takeover" claims, i.e., claims against a depository institution arising prior to RTC's intervention. PBGC argues more broadly that the bar does not apply to the statutory claims plaintiffs assert.
 
 
 28
 Preliminarily, we are satisfied that Sec. 1821(d)(13)(D), to the extent that it conflicts with a provision of ERISA granting the district court jurisdiction, prevails with respect to the subject matter jurisdiction of the district court.
 
 
 29
 That the bar is a statutory exhaustion requirement is indicated by the language "except as otherwise provided in this subsection." Subsection (d) of Sec. 1821 provides for de novo district court jurisdiction only after the filing of a claim with, and the initial processing of that claim by, RTC pursuant to Sec. 1821(d)(5) and (6)(A).[11] Plaintiffs do not contend that they have filed with a receiver any of the claims asserted in this action. Thus, unless the bar is inapplicable, the district court lacked jurisdiction over plaintiffs' claims.
 
 
 30
 We note that clause (i) of the bar refers to "any depository institution for which the Corporation has been appointed receiver." We believe that clause (ii) in using the phrase "such institution" clearly refers back to clause (i), and specifically to the depository institutions to which clause (i) applies. It is clear that all three banks involved in this case are "depository institutions" within the meaning of this language. Under the Federal Deposit Insurance ("FDI") Act, as amended by FIRREA, "depository institution" is defined as "any bank or savings association." 12 U.S.C.A. Sec. 1813(c)(1) (West 1989). A "savings association" is defined as, inter alia, "any Federal savings association," id. Sec. 1813(b)(1)(A), which in turn is defined as "any Federal savings association or Federal savings bank which is chartered under section 1464 of this title." Id. Sec. 1813(b)(2).
 
 
 31
 The record reveals that both City Savings Bank and City Savings were chartered by the Director of OTS pursuant to its authority under section 5(a)(2) of the FDI Act, as amended by FIRREA, 12 U.S.C.A. Sec. 1464(a)(2) (West Supp.1991). The record further reveals that City Federal was chartered prior to FIRREA by the Chairman of the Federal Home Loan Bank Board under the authority of section 5 of the FDI Act, which was section 1464 prior to its amendment by FIRREA. Therefore, these institutions are Federal savings associations within the meaning of the FDI Act, and thus are "depository institutions" under Sec. 1821(d)(13)(D).
 
 
 32
 We turn then to plaintiffs' and PBGC's contentions that the bar does not encompass plaintiffs' claims. Plaintiffs contend that the bar refers only to claims against a "failed institution." We understand plaintiffs to be arguing that the language "any depository institution for which the Corporation has been appointed receiver" does not apply to claims against a depository institution which arise once a conservator or receiver has been appointed for that institution. If we were to agree with this position, all of plaintiffs' claims would fall outside the bar because all the claims arise out of appellants' alleged acts and omissions subsequent to RTC's initial intervention.
 
 
 33
 Plaintiffs' argument requires that we state our understanding of the meaning of the statutory language "for which the Corporation has been appointed receiver." First of all, the "Corporation" referred to is RTC. Second, we again note that clause (ii), in referring to "such institution," imports the language of clause (i), and thus also refers to a depository institution "for which the Corporation has been appointed receiver."
 
 
 34
 The language of the bar simply states that it applies when there is an institution for which RTC "has been" appointed receiver. Thus the issue under the bar is whether, at the time the case came before the district court, RTC had been appointed receiver of the institutions.[12]
 
 
 35
 RTC was appointed receiver of City Federal on December 7, 1989, and of City Savings Bank on September 21, 1990. Both of these events occurred prior to plaintiffs' filing suit on November 6, 1990. Thus, as we read the language of the bar, both are depository institutions for which RTC has been appointed receiver. Therefore, we must reject plaintiffs' contention that the language refers only to pre-takeover institutions.
 
 
 36
 We note an exception to our analysis as to City Savings. At the time the complaint was filed, City Savings was in conservatorship, not receivership.[13] Thus, City Savings was not then a depository institution "for which the Corporation has been appointed receiver."
 
 
 37
 PBGC contends more broadly that the bar has no application to plaintiffs' claims. PBGC characterizes plaintiffs' claims as requiring a resolution of the question whether appellants violated ERISA, and argues that the "claims" referred to in the bar do not encompass such claims. PBGC thus seeks to make a distinction between plaintiffs' ERISA claims and "claims for payment."
 
 
 38
 We see no basis for such a distinction in the language of the bar. Nor are we willing to strain the language to exclude these claims from the claims procedure, particularly in light of the fact that the claims are subject to de novo judicial action following the initial determination by RTC. We thus reject PBGC's challenge to the applicability of the bar to plaintiffs' ERISA claims.
 
 
 39
 Having disposed of plaintiffs' and PBGC's broad objections, we turn to RTC's contention that the bar applies to certain of plaintiffs' claims. RTC concedes that plaintiffs' claims asserted against it in its corporate capacity are not subject to the jurisdictional bar.[14] We agree with RTC that the language of the bar cannot be construed to reach claims asserted against RTC in its corporate capacity. However, RTC does argue that the claims asserted by plaintiffs against the other appellants, and for which the district court granted relief, are subject to the bar. We turn first to those claims for which the district court granted monetary relief.
 
 1. Claims for Monetary Relief
 
 40
 The district court's order granted monetary relief based on plaintiffs's claims related to the failure to make payments to the plan. RTC argues that since those claims seek monetary relief, although dressed in injunctive garb, they are barred under clause (i) of Sec. 1821(d)(13)(D) because payment would necessarily come from the assets in the possession of RTC as receiver for one or more of the banks. RTC asserts, in addition, that clause (ii) is also a bar because plaintiffs' claims relate to the acts or omissions of a depository institution for which RTC was appointed receiver.
 
 
 41
 Putting aside the claims to the extent they seek to hold RTC liable in its corporate capacity, we address RTC's contention that plaintiffs' claims for monetary relief fall within clause (i) because they seek payment from the assets of one of more of the receivership estates. As noted above, the statutory language of that clause, "depository institution for which the Corporation has been appointed receiver," in this case covers City Federal and City Savings Bank but does not apply to City Savings. Thus the bar embodied in clause (i) reaches (1) claims for payment from the assets of City Federal or City Savings Bank, (2) actions for payment from those assets and (3) actions for a determination of rights with respect to those assets.
 
 
 42
 We conclude that plaintiffs' monetary claims against City Federal and its receiver and against City Savings and its conservator and receiver fall within the language of clause (i) referring to actions for payment from the assets of a depository institution for which RTC has been appointed receiver. This is so because any recovery against those entities will be satisfied, if at all, from the assets of City Federal or City Savings Bank, entities for which we have determined RTC has been appointed receiver. Given this conclusion, we need not address RTC's argument that those claims are also barred under clause (ii).
 
 
 43
 This brings us to the monetary claims against City Savings and its conservator. We do not believe these claims fall under clause (i) because they seek neither payment from nor a determination of rights with respect to the assets of a depository institution for which RTC has been appointed receiver. Rather, those claims seek payment from the assets of City Savings, which, for our purposes, is not a depository institution for which RTC has been appointed receiver. Nor does clause (ii) bar these claims. This is so because we construe the "relating" language of that clause to refer to claims against the very institution whose acts are challenged, which must be an institution for which RTC has been appointed receiver. Similarly, the claims against City Savings and its conservator do not relate to acts or omissions of RTC "as receiver."
 
 
 44
 In summary, plaintiffs' monetary claims against appellants other than City Savings and its conservator and RTC in its corporate capacity are subject to the jurisdictional bar. Thus, the jurisdictional basis for the issuance of the injunction directing those appellants to make payments to the plan is lacking.[15]
 
 2. Claims for Nonmonetary Relief
 
 45
 The district court also granted relief on the claims for which plaintiffs sought an order enjoining the retroactive termination of the plan. We turn now to the formidable issue as to whether those claims seeking nonmonetary relief are also barred by any part of Sec. 1821(d)(13)(D). The pertinent provisions are contained in clauses (i) and (ii) and bear repeating:
 
 
 46
 Except as otherwise provided in this subsection, no court shall have jurisdiction over--
 
 
 47
 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
 
 
 48
 (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.
 
 
 49
 As noted above, clause (i) is confined to claims or actions seeking payment from the assets of City Federal or City Savings Bank in receivership, or actions seeking a determination of rights with respect to those assets; whereas clause (ii) refers to claims relating to any act or omission of "such institution or the Corporation as receiver." As previously noted, we interpret "such institution" to refer to clause (i) and thus in this case to City Federal and City Savings Bank.
 
 
 50
 We do not think Congress intended that plaintiffs' claims for an order prohibiting retroactive termination of the plan would be barred by clause (i). We believe the emphasis on "assets" suggests that clause (i) addresses claims looking directly to payments from or recovery of assets, or in some other respect determining rights with respect to assets. Based on this view, clause (i) does not encompass purely injunctive claims relating to retroactive termination of a plan, and was not a bar to the district court's jurisdiction over plaintiffs' nonmonetary claims.
 
 
 51
 We next consider whether clause (ii) bars a claim seeking to restrain the retroactive termination of the plan. Whatever its breadth, we do not believe that clause (ii) encompasses claims that are not susceptible of resolution through the claims procedure. The claims procedure provides RTC with the authority to "determine claims," 12 U.S.C.A. Sec. 1821(d)(3), to "allow" and "disallow" claims, id. Sec. 1821(d)(5)(B), (C)(i), (D), and to "pay creditor claims," id. Sec. 1821(d)(10)(A). We are at a loss to understand how RTC would "determine," or "allow" or "disallow," a claim seeking an order barring retroactive termination of the plan, or how it would "pay" such a claim if allowed. Thus we conclude that plaintiffs' claims for an injunction prohibiting retroactive termination of the plan are not susceptible of resolution in the claims procedure.
 
 
 52
 We therefore conclude that plaintiffs' claims for nonmonetary injunctive relief--barring retroactive termination of the plan--are not subject to the jurisdictional bar.
 
 3. Exceptions to Exhaustion
 
 53
 Given that some of plaintiffs' claims are subject to the jurisdictional bar, we must address plaintiffs' and PBGC's arguments that exhaustion should be excused and plaintiffs' arguments that the claims procedure is unconstitutional. Because we have determined that plaintiffs' claims for nonmonetary relief do not fall within the bar, we need only address these arguments as they relate to claims for monetary relief.
 
 
 54
 Plaintiffs and PBGC assert that exhaustion of the claims procedure should be excused in this case on a variety of grounds. RTC maintains that judicial exceptions to exhaustion do not apply where exhaustion is a statutory jurisdictional requirement, and that, in any event, plaintiffs and PBGC have not established the applicability of any exception.
 
 
 55
 Initially we note that we are not confronted with a judicially created exhaustion requirement, but with one that is mandated by statute. Further, Congress made this statutory exhaustion requirement explicitly jurisdictional. We are thus mindful of our responsibility to apply this requirement "with a regard for the particular administrative scheme at issue." See Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).
 
 
 56
 In this case we need not decide whether an exception can ever apply to the statutory exhaustion requirement embodied in Sec. 1821(d)(13)(D), because the theories advanced by plaintiffs and PBGC do not warrant recognition of an exception here.
 
 
 57
 Plaintiffs contend that requiring exhaustion would be futile in this case because RTC has already stated its position on the merits of their claims. PBGC makes the related argument that RTC has already made a final determination on the controlling legal question.
 
 
 58
 We do not believe that requiring exhaustion of the monetary claims in this case would be futile. RTC's legal position in this litigation is not necessarily conclusive of the receiver's determination of plaintiffs' claims. If RTC as receiver were to allow and satisfy plaintiffs' claims in whole or in part, the dispute now before this court would be moot to that extent.
 
 
 59
 Plaintiffs also insist that the receiver is not able to grant the relief they request. First, they state that, even if the receiver were to allow their claims, at most they will be granted "a 'Receiver's Certificate' against an assetless entity, and without recoupment of their substantial attorneys' fees and costs." Second, they argue that they will be unable to obtain "the type of preliminary, equitable or remedial relief" they seek. Third, they argue that "there was no ability to cure the irreparable harm in failing to have the Plan properly funded...."
 
 
 60
 The thrust of plaintiffs' argument is that the receiver is unable to provide them with monetary relief. We are unable at this stage to say that the receiver could not compensate plaintiffs through the claims procedure. The assets available for these and other creditors, as well as plaintiffs' priority status, are neither part of the record before us nor determinable by this court at this juncture but are properly determinable by the receiver. Nor does the possible six-month period for exhaustion of the claims procedure[16] in and of itself render the claims procedure inadequate, in contrast to the limitless delay that could be imposed by FSLIC in Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp., 489 U.S. 561, 587, 109 S.Ct. 1361, 1376, 103 L.Ed.2d 602 (1989).
 
 
 61
 To the extent plaintiffs argue that the receiver is unauthorized or unable to provide the nonmonetary relief they request, we agree, and for that reason have already determined that such claims are not subject to the bar.
 
 
 62
 We turn now to plaintiffs' argument that because they cannot obtain allowance of attorneys' fees and costs in the claims procedure, the remedy afforded by that procedure is inadequate and, therefore, they should not be required to exhaust. We assume that in speaking of attorneys' fees and costs plaintiffs refer to expenses incurred in this litigation. Plaintiffs' argument presupposes that the district court could grant such fees and costs. We think this presupposition is invalid because, as to claims over which the district court lacked jurisdiction, even the district court could not grant such fees. Thus, the receiver's alleged inability to award attorneys' fees incurred in this litigation does not speak to the adequacy of the claims procedure.
 
 
 63
 PBGC argues that the purposes underlying exhaustion are not served by requiring plaintiffs to comply with the claims procedure, and thus exhaustion should be excused. In particular, PBGC contends that the purposes of exhaustion are not served when only legal issues are involved, i.e., whether appellants violated ERISA, and where RTC has no expertise as to those legal issues. See, e.g., Flying Tiger Line v. Teamsters Pension Trust Fund, 830 F.2d 1241, 1252-53 (3d Cir.1987); Bethlehem Steel Corp. v. Environmental Protection Agency, 669 F.2d 903, 907 (3d Cir.1982). We again stress that we must examine this question in light of the particular scheme envisioned under FIRREA. See Salfi, 422 U.S. at 765, 95 S.Ct. at 2466. The primary purpose underlying FIRREA's exhaustion scheme is to allow RTC to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation. See H.R.Rep. No. 101-54(I), 101st Cong., 1st Sess. 418-19, reprinted in 1989 U.S.Code Cong. & Admin.News 86, 214-15. Thus, the purpose underlying exhaustion in this context is more limited than under other schemes. This is reasonable given the brevity of the exhaustion procedure and the de novo judicial review of claims once the procedure is exhausted. Because exhaustion in this case will fulfill this narrow purpose, no exception is warranted.
 
 4. Constitutional Challenges
 
 64
 We turn now to plaintiffs' constitutional arguments. Plaintiffs contend that requiring them to submit their claims to RTC as receiver is unconstitutional under Article III and the fifth amendment requirement of due process. Specifically, plaintiffs argue that they will be denied meaningful and effective review because they must submit their claims to initial review by a biased entity without the benefit of discovery or a hearing and will suffer irreparable harm before they can present their claims to an Article III court.
 
 
 65
 RTC argues that the claims procedure does not violate Article III because it gives a claimant the opportunity to sue in a de novo court action a maximum of six months after it files its claim. We agree. Plaintiffs are not deprived in any way of access to an Article III court, but at most suffer a relatively slight delay to permit a receiver to determine whether to allow their claims. Cf. Coit, 489 U.S. at 578, 109 S.Ct. at 1371 (Court did not reach Article III argument in light of ruling that FSLIC did not have adjudicatory authority over plaintiffs' claims and that plaintiffs were entitled to de novo judicial consideration of claims).
 
 
 66
 As to due process, plaintiffs first argue that the claims procedure fails to provide them an opportunity to be heard at a meaningful time and in a meaningful manner. They cite Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), which addressed the constitutional adequacy of post-seizure hearings. We distinguish this case from those cited by plaintiffs on the ground that we do not address the problem of a seizure of property without a prior hearing, and find no other support for plaintiffs' position that the opportunity for a de novo court action six months after they file their claims fails to provide them meaningful review.
 
 
 67
 Finally, plaintiffs argue that RTC is biased because it is called upon to review its own challenged conduct and possesses a financial interest in the determination of plaintiffs' claims.[17] See, e.g., Marshall v. Jerrico, Inc., 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980); Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Given the nature of the bias alleged, we conclude that there is no due process violation because the receiver's determination is not a binding adjudication and because, if plaintiffs so choose, a court will evaluate their claims de novo.
 
 
 68
 Based on the foregoing, we conclude that the bar applies to plaintiffs' monetary claims against all appellants other than City Savings and its conservator and RTC in its corporate capacity. This requires reversal of all aspects of the district court's order based on such claims. After excising these portions, what remains of the preliminary injunction for further analysis is as follows: (1) City Savings and its conservator and RTC in its corporate capacity were ordered to make all contributions due under the plan to the trustee and to make all future contributions as due; and (2) all appellants were enjoined from taking any further action to terminate the plan and from taking any other actions which would prejudice or adversely affect the rights of the plaintiffs; and (3) all appellants were enjoined from sending or filing any further documents for the purpose of terminating the plan.
 
 
 69
 B. PRELIMINARY INJUNCTION AGAINST APPELLANTS OTHER THAN RTC
 
 IN ITS CORPORATE CAPACITY
 
 70
 RTC contends that a provision of FIRREA, 12 U.S.C.A. Sec. 1821(j) (West 1989), prohibited the district court's injunction in all its respects except as to RTC in its corporate capacity. Section 1821(j) reads:
 
 
 71
 Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.
 
 
 72
 RTC concedes that this provision does not affect orders running against it in its corporate capacity. Here again we note that, to the extent of a conflict between this provision and provisions of ERISA authorizing relief, Sec. 1821(j) controls.
 
 
 73
 Before confronting RTC's contention, we initially address plaintiffs' and PBGC's broad challenge to the applicability of Sec. 1821(j) to the district court's order. We understand their argument to be that, while RTC as conservator and receiver is authorized to run the affairs of a troubled institution, including its personnel relation affairs, it is only authorized to run them in a legal manner. Thus, because the termination of the plan was illegal under ERISA, that termination was not among the "powers or functions of the Corporation as a conservator or a receiver."
 
 
 74
 We find no such limitation in the language of Sec. 1821(j). Furthermore, plaintiffs' and PBGC's interpretation would undermine the purpose of the statute, namely, to permit RTC as conservator or receiver to function without judicial interference that would restrain or affect the exercise of its powers. See infra at 399-400. We therefore reject plaintiffs' and PBGC's broad challenge and move on to address RTC's contention as to the applicability of Sec. 1821(j) to the district court's order.
 
 
 75
 RTC's argument first requires that we identify the powers of RTC as conservator and receiver. These powers are defined by FIRREA and for the most part are found at 12 U.S.C.A. Sec. 1821(d)(2) (West 1989) which provides in part as follows:
 
 
 76
 (A) Successor to institution
 
 
 77
 The Corporation shall, as conservator or receiver, and by operation of law, succeed to--
 
 
 78
 (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; ...
 
 
 79
 ....
 
 
 80
 (B) Operate the institution
 
 
 81
 The Corporation may, as conservator or receiver--
 
 
 82
 (i) take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;
 
 
 83
 ....
 
 
 84
 (iv) preserve and conserve the assets and property of such institution.
 
 
 85
 ....
 
 
 86
 (D) Powers as conservator
 
 
 87
 The Corporation may, as conservator, take such action as may be--
 
 
 88
 (i) necessary to put the insured depository institution in a sound and solvent condition; and
 
 
 89
 (ii) appropriate to carry on the business of the institution and preserve and conserve the assets and property of the institution.
 
 
 90
 (E) Additional powers as receiver
 
 
 91
 The Corporation may, as receiver, place the insured depository institution in liquidation and proceed to realize upon the assets of the institution, having due regard to the conditions of credit in the locality.
 
 
 92
 The quoted statutory powers given the conservator and receiver are quite broad, in keeping with the emergent objectives of the statute. We must determine whether the terms of the preliminary injunction requiring City Savings and its conservator to make payments to the plan "restrain or affect the exercise" of those powers.
 
 
 93
 The injunction orders City Savings and its conservator to make the contributions due and owing to the trustee and to continue to make timely contributions to the trustee as required by the plan. We think these provisions impinge on the statutory powers of RTC as conservator of City Savings (and now as receiver) to "preserve and conserve the assets and property of such institution." Id. Sec. 1821(d)(2)(B)(iv). We say this because implementation of the injunctive provisions would clearly require distribution of the assets of City Savings and thereby encroach on the power of the conservator (now receiver) to preserve and dispose of the assets within its control. Indeed, implementation of these provisions of the injunction could result in forcing City Savings to accord the trustee, and therefore the beneficiaries of the plan, a preference over other creditors.
 
 
 94
 Thus, to the extent the district court's injunctive order required City Savings, and its conservator or receiver, to pay money from its assets, it violated Sec. 1821(j) and must be reversed.
 
 
 95
 We now turn to the injunction as it provides nonmonetary relief against all appellants other than RTC in its corporate capacity. This portion of the order essentially bars appellants from taking any action to terminate the plan.[18]
 
 
 96
 The plan established by City Federal provided at section 15.1(a) that City Federal's Board of Directors "reserves the right at any time to amend, suspend or terminate the Plan ... for any reason and without the consent of any ... Participant [or] Beneficiary...." Under Sec. 1821(d)(2)(A)(i) the receiver for City Federal succeeded to the termination rights contained in the original plan. Further, the assumption did not alter this provision of the plan, and thus under the plan RTC, as conservator or receiver for City Savings Bank, reserved the same right to terminate.[19] Under these circumstances the nonmonetary provisions of the order prohibiting City Federal and City Savings Bank from taking steps to terminate the plan encroached on the exercise of statutory power residing in RTC as receiver and conservator.
 
 
 97
 This analysis is not inconsistent with the Supreme Court's recent decision in Coit, 489 U.S. 561, 109 S.Ct. 1361. In that case, which was decided prior to the enactment of FIRREA, a savings institution was sued for damages and declaratory relief for breach of contract and other state law claims. After FSLIC was appointed receiver of the institution and removed the case to federal court, FSLIC sought to have the action dismissed. FSLIC argued that 12 U.S.C. Sec. 1464(d)(6)(C), a statute similar to Sec. 1821(j),[20] barred the relief on the ground that resolution of the suit would restrain and affect the exercise of its powers as receiver. The Court disagreed and permitted the suit to continue.
 
 
 98
 The Court stated that the statutory language "prohibits courts from restraining or affecting FSLIC's exercise of those receivership 'powers or functions' that have been granted by other statutory sources." 489 U.S. at 574, 109 S.Ct. at 1369. Because the Court had ruled that FSLIC was not granted the statutory authority to adjudicate claims, judicial resolution of those claims did not impinge on its powers. In contrast to the situation in Coit, we have determined that the order does impinge on the exercise of powers granted by statute.
 
 
 99
 This brings us to that aspect of the district court's order prohibiting City Savings from terminating the plan. In contrast to City Savings Bank, City Savings did not assume the plan, and in fact the plan was "returned" to City Federal prior to City Savings' coming into existence. Thus, as to it this portion of the injunction has no meaning or effect because City Savings had no authority with respect to the plan.
 
 
 100
 In light of the foregoing we conclude that in granting monetary relief against City Savings, and in prohibiting City Federal and City Savings Bank from terminating the plan, the injunction contravenes the provisions of Sec. 1821(j).[21] Further, in prohibiting City Savings from terminating the plan the injunction has no force or effect. On these bases the district court's order granting monetary relief against City Savings and nonmonetary relief against all appellants other than RTC in its corporate capacity must be reversed.
 
 
 101
 In reaching our conclusion that some portions of the district court's order were prohibited by Sec. 1821(j), we emphasize that the effect of that section in this case is solely to prevent a particular remedy in the interest of allowing RTC as receiver or conservator promptly to perform its important functions in dealing with the savings and loan crisis. It does not deprive plaintiffs, if wronged, of any other remedy that would not "restrain or affect" the exercise of the receiver's or conservator's powers or functions. We naturally express no opinion as to the alleged wrongfulness of RTC's conduct.
 
 
 102
 Moreover, we do not mean to be understood as saying that an order restraining or affecting RTC's exercise of its powers as receiver or conservator could never issue. Indeed, courts have recognized exceptions to provisions worded even more broadly than Sec. 1821(j). See, e.g., South Carolina v. Regan, 465 U.S. 367, 378, 104 S.Ct. 1107, 1114, 79 L.Ed.2d 372 (1984) (provision prohibiting courts from enjoining collection of taxes does not prohibit injunction where Congress has provided plaintiff with no alternative remedy); Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962) (prohibition of tax injunction statute might not apply where it is apparent that at time of suit, under most liberal view of facts and law, government cannot establish claim). However, we are not asked to invoke any such exception to the statutory language.
 
 
 103
 C. PRELIMINARY INJUNCTION AGAINST RTC IN ITS CORPORATE CAPACITY
 
 
 104
 The final task left to us is to address RTC's argument that the district court's order against it in its corporate capacity must be reversed. As we stated above, RTC concedes the inapplicability to it of both the jurisdictional bar and Sec. 1821(j) because those provisions do not address RTC in its corporate capacity. Thus, we turn to RTC's arguments as to the merits of the preliminary injunction.
 
 
 105
 We reiterate that the district court's injunction granted both monetary and nonmonetary relief against RTC in its corporate capacity. RTC argues that the injunction was improperly granted because plaintiffs did not establish irreparable harm, one of the elements necessary to obtain preliminary injunctive relief. We shall first address RTC's contention in the context of the monetary relief granted against RTC in its corporate capacity.
 
 
 106
 The primary instance of irreparable harm asserted by plaintiffs, and on which the district court relied, was plaintiffs' need for injunctive relief to preserve any damage judgment they might obtain. See Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 205 (3d Cir.1990); see also Fechter v. HMW Indus., Inc., 879 F.2d 1111, 1121 (3d Cir.1989) (preliminary injunction necessary to preserve status quo in light of employer's distribution of assets following termination of ERISA plan). Assuming that RTC in its corporate capacity could be subject to a money judgment, no showing has been made by plaintiffs that it would be unable to satisfy such a judgment. Thus, plaintiffs have failed to show irreparable harm.
 
 
 107
 Plaintiffs argue that a finding of irreparable harm is unnecessary in light of ERISA's express recognition of statutory remedies. Plaintiffs rely on Government of Virgin Islands, Dept. of Conservation & Cultural Affairs v. Virgin Islands Pavings, Inc., 714 F.2d 283, 286 (3d Cir.1983), where this court remanded to permit the district court to grant preliminary injunctive relief without a showing of irreparable harm. That case involved a suit by the Virgin Islands to enjoin certain land uses allegedly in violation of Virgin Islands environmental laws. That case suggests that the necessity of irreparable harm in light of a statute granting courts the power to issue preliminary injunctions varies with the particular statute involved and the relief requested. While ERISA unquestionably grants courts the power to issue preliminary injunctions, nothing in ERISA indicates that, where monetary relief is requested, the traditional requirement of irreparable harm need not be shown. We agree with the Seventh Circuit that to obtain monetary relief on a preliminary injunction, a private litigant must establish irreparable harm. See Gould v. Lambert Excavating, Inc., 870 F.2d 1214, 1221 (7th Cir.1989); cf. Fechter, 879 F.2d at 1119-21 (plaintiffs successfully established irreparable harm in ERISA action). We have already determined that plaintiffs failed to establish irreparable harm against RTC in its corporate capacity, and thus conclude that the district court, in granting monetary preliminary injunctive relief against RTC in its corporate capacity, did not exercise sound discretion.
 
 
 108
 We now turn to the nonmonetary injunctive relief granted against RTC in its corporate capacity, which prohibited termination of the plan. We need not consider whether plaintiffs were required under ERISA to make a showing of irreparable harm to obtain this relief, because we find legal error in the granting of the injunction in this respect. See Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1242 (3d Cir.1983), cert. dismissed, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984).
 
 
 109
 RTC argues that the order prohibiting termination is "overbroad" because both the plan and ERISA give plan sponsors authority to seek plan termination. PBGC agrees with RTC. Plaintiffs argue that RTC failed to raise its overbreadth argument in the district court. RTC responds that it objected to the entire order before the district court. We are persuaded to address this contention in light of RTC's broad objections before the district court.
 
 
 110
 Plaintiffs urge this court to read the district court's order to restrain only retroactive termination. We cannot so read the order. Rather, it broadly prohibits any steps to terminate. There is no basis in law for such an order. As PBGC states, "ERISA permits the administrator of a plan to initiate termination pro[c]eedings in accordance with Title IV's procedures." See, e.g., 29 U.S.C. Sec. 1341. Further, the plan at section 15.1 states that "the Board of Directors reserves the right at any time to ... terminate the Plan...." Nothing in the district court's analysis supports an order barring termination of the plan in compliance with ERISA. More than being overbroad, the order simply has no legal foundation. Where a preliminary injunction has been issued or denied based on an erroneous view of the law, it is the obligation of this court to reverse it. See Apple Computer, 714 F.2d at 1242. Therefore, because there was no foundation in ERISA for the district court's order barring termination, we must reverse the district court's order against RTC in its corporate capacity for nonmonetary relief.[22] Because of our conclusion, we need not address RTC's other arguments for reversal.
 
 III. CONCLUSION
 
 111
 The order of the district court granting a preliminary injunction will be reversed.
 
 
 
 [1]
 The Director based this action upon a determination under Sec. 1464(d)(2)(A) that (1) there existed substantial dissipation of earnings due to unsafe and unsound practices, (2) City Federal was in unsafe and unsound condition to transact business, (3) losses were likely to deplete City Federal's capital without reasonable prospect of it being replenished absent federal assistance, and (4) the existence of unsafe and unsound business practices was likely to cause insolvency or substantial dissipation of assets or weaken City Federal's condition
 
 
 [2]
 PBGC is the federal agency charged with carrying out certain functions under Title IV of ERISA relating to plan termination and termination insurance. See 29 U.S.C. Secs. 1302, 1303 (1988). PBGC has intervened in this appeal in support of plaintiffs. See 29 U.S.C.A. Sec. 1370(d) (West Supp.1991). We are advised that, subsequent to the district court's order and to the notice of appeal, PBGC intervened in the district court by consent of all parties and filed a complaint on its own behalf. Because PBGC was not a party before the district court when the district court entered the order appealed from, we review PBGC's arguments only as stated in its briefs and argument before this court
 
 
 [3]
 Under the plan, the plan administrator, an identified bank employee, had "general responsibility for the administration ... of the Plan (including ... determining eligibility for benefits [and] authorizing payment of benefits ...)."
 
 
 [4]
 12 C.F.R. Sec. 563.47(a) (1990) states in part: "No savings association ... shall sponsor an employee pension plan which, because of unreasonable costs or any other reason, could lead to material financial loss or damage to the sponsor."
 
 
 [5]
 We infer from this representation that some time between the July 19 notice to participants and the September 19 notice to PBGC, RTC as receiver for City Federal assumed the functions of Mr. Kaplowitz as plan administrator
 
 
 [6]
 It has come to our attention that, subsequent to the notice of appeal, the district court entered an order certifying the class
 
 
 [7]
 Plaintiffs also claimed fiduciary breaches by the trustee for, inter alia, "wrongfully permitting the Plan Administrator to refrain from making the required Plan contributions." We note that the trust agreement contained a provision stating that the trustee "shall not have authority to enforce the collection from the Company or from any Employer of any contribution to the Master Trust Fund." The trustee is not a party to the preliminary injunction, and thus no issue is before this court as to its potential liability
 
 
 [8]
 We note that we are not called upon to consider the applicability of the exhaustion requirements of the Federal Tort Claims Act, 28 U.S.C. Secs. 2671-2680 (1988), to this case
 
 
 [9]
 By order of this court, upon the consent of the parties, the payment provisions of the December 10 order are stayed pending the disposition of this appeal, on the condition that appellants pay into an escrow account certain of the amounts required to be paid to the trustee under the order
 
 
 [10]
 Sections 11, 12 and 13 of the Federal Deposit Insurance Act, as amended, 12 U.S.C.A. Secs. 1821, 1822 and 1823 (West 1989), which are applicable to the Federal Deposit Insurance Corporation, are made applicable to RTC by way of another provision of FIRREA, 12 U.S.C.A. Sec. 1441a(b)(4) (West Supp.1991)
 
 
 [11]
 That such court action is de novo is indicated in FIRREA's prohibition against judicial review of the initial claims determination. See id. Sec. 1821(d)(5)(E); H.R.Rep. No. 101-54(I), 101st Cong., 1st Sess. 418, reprinted in 1989 U.S.Code Cong. Admin.News 86,214
 
 
 [12]
 It is a firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint. See F. Alderete Gen. Contractors, Inc. v. United States, 715 F.2d 1476, 1480 (Fed.Cir.1983) (citing Rosado v. Wyman, 397 U.S. 397, 402, 90 S.Ct. 1207, 1212, 25 L.Ed.2d 442 (1970); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 293, 58 S.Ct. 586, 592, 82 L.Ed. 845 (1938))
 
 
 [13]
 It was brought to our attention during this appeal process that RTC has now been appointed receiver for City Savings
 
 
 [14]
 RTC, although it concedes that the jurisdictional bar does not apply to it in its corporate capacity, argues that the claims against it must be dismissed, upon dismissal of the other claims for lack of subject matter jurisdiction, due to the absence of indispensable parties. This argument is premature at best because our subject matter jurisdiction rulings on this appeal from the granting of a preliminary injunction do not automatically result in the dismissal of any party from the case
 
 
 [15]
 Plaintiffs argue that clause (ii) of the bar applies only to challenges to RTC's administration of the claims procedure in its capacity as receiver. Because we have based our ruling barring certain of plaintiffs' monetary claims only on clause (i) of the bar, we need not address this argument
 
 
 [16]
 Under the claims procedure the maximum time a claimant must wait after filing its claim before bringing suit is 180 days. See 12 U.S.C.A. Sec. 1821(d)(6)(A) (West 1989)
 
 
 [17]
 Plaintiffs argue that under FIRREA RTC has a financial interest in preventing contributions to the plan by virtue of its being a creditor of the institution. See Coit, 489 U.S. at 587, 109 S.Ct. at 1376 (FSLIC often main creditor of failed association); 12 U.S.C.A. Sec. 1821(g) (Corporation subrogated to rights of depositors), (d)(11) (West 1989) (receiver gives Corporation priority in liquidation on subrogated claims)
 
 
 [18]
 The nonmonetary provisions of the order clearly prohibit either steps to terminate or the filing of documents for the purpose of terminating. The order also prohibits "any other action which would prejudice or adversely affect the rights of" plaintiffs. The language and placement of the latter provision indicate that it is related to and flows from the provision barring termination, and for that reason we read it together with that provision to bar termination
 
 
 [19]
 No party challenges the right under ERISA of an employer to take steps toward terminating a plan. See, e.g., 29 U.S.C. Sec. 1341. We note that under ERISA it is the plan administrator who carries the obligations with respect to termination. See, e.g., id
 
 
 [20]
 The legislative history to FIRREA shows that Congress intended Sec. 1821(j) to have the same effect as 12 U.S.C. Sec. 1464(d)(6)(C) (1988). See H.Rep. No. 101-54(I), 101st Cong., 1st Sess. 334, reprinted in 1989 U.S.Code Cong. & Admin.News 86, 130. That section, now amended by FIRREA, see 12 U.S.C.A. Sec. 1464(d)(2)(G) (West Supp.1991), stated "Except as otherwise provided ... no court may ... restrain or affect the exercise of powers or functions of a conservator or receiver."
 
 
 [21]
 We emphasize that our ruling involves the application of Sec. 1821(j) to a portion of this injunction, and we express no opinion as to the general scope of the language of that provision
 
 
 [22]
 We do not determine whether RTC in its corporate capacity had any authority which would have allowed it as such to act with respect to termination of the plan