**RESOLUTION TRUST CORPORATION, As Receiver for Nassau Savings & Loan Association and as Conservator for Nassau Federal Savings & Loan Association**

v.

**William A. CLARKE, Alan J. Kirsch, and Overlook Valley Corporation.**

**Civ. A. No. 90–7758.**

United States District Court, E.D. Pennsylvania.

April 21, 1992.

Wolf Block, Schorr and Solis–Cohen by Leonard P. Goldberger, Philadelphia, PA, Baker & Botts by Kirk K. Van Tine, Washington, DC, for plaintiff.

Spector, Gadon & Rosen by Robert L. Grundlock, Jr., Philadelphia, PA, John Trinsey, for defendants.

BENCH OPINION *

LOUIS H. POLLAK, Senior District Judge.

What remains to be considered is first the motion of RTC for summary judgment,

---

* This bench opinion was originally delivered on April 16, 1992, and was filed on April 21, 1992. It has been very slightly edited with a view to achieving some minimal level of intelligibility.

which contends that all of the counterclaims interposed by the defendants are matters with respect to which this court is deprived of subject matter jurisdiction by virtue of those provisions of FIRREA which undertake to locate in RTC's administrative processing primary authority for the adjudication of claims against RTC in its role as receiver, or, as RTC views it, conservator as well.

The focus of the contention is, of course, the statutory language, 12 U.S.C. 1821(d), and its many subparts of Title 12. It is clear that that statutory language does contemplate that the place where in the first instance claims should be asserted is RTC, and the form of the statutory direction is jurisdictional.

1821(d)(13)(D) starts out, "Except as otherwise provided in this subsection, no court shall have jurisdiction over (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver."

The counterclaims in this case are counterclaims which are directed at RTC in its capacity as "receiver for Nassau Savings and Loan Association" and as "conservator for Nassau Federal Savings and Loan Association."

The distinction evidently arises from the particular history which gives frame to this litigation. RTC was appointed receiver of Old Nassau—that is to say Nassau Savings and Loan—on March 8th, 1990, and on the same date, I believe, the Office of Thrift Supervision, which had appointed RTC as receiver, provided for the creation of New Nassau (Nassau Federal Savings and Loan) and appointed RTC as conservator for New Nassau. RTC did not become receiver for New Nassau, which it now is, until August 23 of 1991.

We have today provided for the substitution of RTC as receiver for New Nassau in an order that has already been determined.

That clerically brings the caption into accord with the actual history of the litigation.

The position of RTC is that a proper understanding of FIRREA precludes the exercise of subject matter jurisdiction by a court—this court or any court—of claims against RTC, whether as receiver or as conservator.

That argument made at some length and with considerable skill this morning by counsel for RTC confronts in this Circuit the uncomfortable fact that our Court of Appeals ruled to the contrary just last year in *Rosa v. Resolution Trust Corp.*, 938 F.2d 383 (3d Cir.1991).

The distinction between claims made against RTC as receiver and RTC as conservator, stated in Rosa, is, of course, binding in this court, as counsel for RTC has pointed out. There is very respectable contrary authority reflected in the Tenth Circuit's decision in *RTC v. Mustang Partners*, 946 F.2d 103 (10th Cir.1991). I mean no disrespect to the Tenth Circuit in saying that I'm not at liberty to look to it for wisdom. It is a fine Circuit, as all Circuits are, beyond the pale of this Circuit, but by definition not as good a Circuit as our own. So I will continue to follow Rosa until it is divested of authority by the Supreme Court or until such time as the Third Circuit itself reviews the problem in what would have to be an en banc proceeding.

Suffice it to say, that the issues are real ones and the analysis deployed by the Third Circuit in *Rosa* is—to the extent that a trial judge is entitled to have an opinion—indeed a respectable and comprehensible analysis of the statutory framework. But the analysis adopted by the Tenth Circuit and deployed by the RTC in argument today is certainly plausible and deserving of serious consideration of those jurisdictions that have not yet resolved the matter one way or another.

Now, that means that for our case, notwithstanding that RTC is now the receiver for New Nassau, having been appointed to that position on August 23, 1991, the counterclaims which were addressed to RTC in

its former role as conservator are not claims on which this Court, following *Rosa*, lacks jurisdiction.

We wind up, that is to say, with a bifurcation of these counterclaims: stripping away those counterclaims that run to RTC as receiver for Old Nassau, and maintaining jurisdiction over those that run against RTC initially as conservator, and now as receiver, for New Nassau.

■ Now, it may be reasonably asked why, if RTC is now at last cloaked in the majesty of a receivership for New Nassau, that doesn't cure the problem from RTC's point of view and divest this court of all jurisdiction with respect to the counterclaims? The answer lies again in *Rosa*.

What the Court of Appeals in *Rosa* determined—is that the temporal perspective that is controlling is the status of RTC at the time of the filing of the claim against RTC. See *Rosa*, 938 F.2d at 392. "The language of the bar simply states that it applies when there is an institution for which RTC 'has been' appointed receiver. Thus the issue under the bar is whether, at the time the case came before the district court, RTC had been appointed receiver of the institutions." That again is a construction of the FIRREA statute which RTC resists, but, of course, it is a construction by which this court is bound. In *Rosa*, itself, RTC was a defendant, not, as it is here, a plaintiff. It is, of course, the view of the defendants in this case that the whole *Rosa* analysis, and the statutory basis for preclusion of judicial jurisdiction, unless and until the administrative pathway has been followed, is inapplicable here, because here the defendants are merely counterclaiming they didn't want to be in court at all. They are not initiating the judicial action, as was the case with the claimants against the RTC in *Rosa*.

That is a distinction which one can understand on an emotional level. That is to say the defendants here just want to be left alone because they are occupying property that RTC wants, and that puts them in a different posture from the plaintiffs in *Rosa*.

■ However that may be, it is a distinction which strikes me as having no footing in the statutory framework at all. The same reasons that make for giving RTC primary jurisdiction over claims against it when it is operating in its receiver (or, as it would say, conservator) capacity are operative whether the claims are asserted by way of complaint or by way of counterclaim.

In either event, Congress contemplated that the RTC should have responsibility for administrative review of claims against it, recognizing that there would be hundreds, perhaps thousands, of claims arising out of any particular assumption of authority by RTC over a failing financial institution. Congress also intended that RTC have responsibility for making fair disposition of claims, which, from the point of view of the individual claimant, are individual, but from the point of view of the administering agency, RTC, are a universe of claims which it is statutorily obligated to treat equitably.

So I must, of course, in my view reject defendants' proposition that the *Rosa* analysis does not apply to divest the court of jurisdiction in a situation in which it is the defendants' counterclaim rather than the plaintiff's claims that are at issue.

■ However—and here I go back to the matter of chronology, and the distinction between conservatorship and receivership—though it is the case that the Court of Appeals in *Rosa* looked to the date of the filing of the complaint as the date on which to determine RTC's status, it strikes me that it is consistent with *Rosa* to conclude that in a case which is in our posture, in which the claims against RTC are asserted by way of counterclaim rather than in an original complaint, the dispositive temporal ingredient should be not the date of the filing of the complaint, but the date of the filing of the counterclaim. I see nothing in *Rosa* that militates against that.

Now, if we examine the calendar in that respect, it appears that RTC was appointed receiver for New Nassau on August 23, 1991. That date antedates the filing of the amended answer to the counterclaim that is

before the Court right now. That was filed on November 6th, 1991. However, the controlling date, in my judgment, must be the date of the filing of the original answer and counterclaim, and that date, as I understand the record, was February 4, 1991. That is the date that I view as controlling in this instance.

Accordingly, I determine that this court has jurisdiction to entertain those aspects of the defendants' counterclaims that run against RTC as conservator for New Nassau (Nassau Federal) as of the filing of the original counterclaim on February 4, 1991.

I had not undertaken to dissect the pleading to separate out just what claims would be preserved under that concept, and I think it will become prudent for the defendants to replead to file an amended counterclaim that excises anything at all directed at RTC as receiver for Old Nassau, and preserves only those claims asserted against RTC as conservator for New Nassau as of February 4, 1991.

If the amended counterclaim enlarges without changing the nature of the original counterclaim, as directed against RTC as conservator for New Nassau, that seems to me simply a matter of natural amendment. But the jurisdictional line is to be drawn as I have stated it. And, as I say, I think to clear matters up from here forward, a repleading of the counterclaim would be in order.

■ Now, RTC has sought, in the alternative of a jurisdictional dismissal of the entire group of counterclaims, that this court may, in its misguided inherence to *Rosa*, as the RTC would see it, maintain jurisdiction over those claims, but stay these proceedings—for 180 days so that the counterclaimants can have recourse to RTC's administrative processes.

Quite obviously, RTC regards this as a second best way of proceeding. They think it's entitled to dismissal, but if a court thinks otherwise, RTC points out that a stay is an arrangement that has some footing in the statute and has been judicially pursued. Relevant references are 12 U.S.C. §§ 1821(d)(6)(A) and 1821(d)(5)(A)(i).

And Judge Sarokin in *Palm Beach Federal Savings Bank v. RTC*, No. Civ.A. 91–1347 (D.N.J. Nov. 22, 1991) pursued just this pathway. Defendants have no enthusiasm for going that route. They have very little expectation that that would be fruitful.

I decline to enter into any discussion of the adequacy of the administrative remedy. I take it as an article of faith that a federal agency will undertake to carry out its statutory obligations. The rationale for such a stay is, I think, clear enough. It is a rationale that is supported in a very jurisdictional analysis that we've already had reference to. It would be supportive of the administrative scheme for RTC to be able to consider administratively, along with other claims, the claims pressed by the present defendants.

And so I will direct a stay for the purposes of what I proposed, that is to give the defendants an opportunity to go to RTC, and for RTC to undertake to process those counterclaims. In doing so, I will strip the counterclaims of their equitable components.

■ The counterclaims seek specific performance of what is alleged to be a contract for the sale of Rebel Hill, which has not been performed by Old Nassau, and whose illegal breach RTC has compounded, in the counterclaims' view. I conclude that the request for equitable relief of that kind is an interference with RTC's statutory authority to handle its responsibilities as receiver and/or conservator. That, I think, is the clear instruction of § 1821(j), and the statutory instruction has been followed by our Court of Appeals again in *Rosa*, 938 F.2d at 398.

The fact that the particular relief sought by these particular counterclaimants is perceived by them as a modest interference with RTC's operations cannot, in my view, draw the sting from the fact that the relief sought would, if granted, be a direction to RTC as to what to do or not do with what RTC regards as an asset now in RTC's custody.

As I read FIRREA, I lack judicial power to entertain any such prayer for equitable relief. The issue treated as one of power does not depend on the reasonableness or the legitimacy of what it is that RTC proposes to do or not do, which is the position taken by defendant counterclaimants. The moment I enter the tepid waters of determining reasonableness or legitimacy, I think I am undertaking exactly that superintendence of RTC's business judgment which Congress has instructed me to refrain from doing.

██ The final issue is whether I should, as requested by RTC, excise direct withdrawal of the lis pendens, which has been filed by defendants with respect to Rebel Hill. It is clear from the argument today—there was consensus—that the filing of the lis pendens operates as a substantial drag on the marketability of Rebel Hill.

RTC proposes to dispose of Rebel Hill in the marketplace, and that, of course, is exactly what the counterclaimants don't want to have happen. They seek judicial direction that Rebel Hill be transferred to them. I've already addressed the reasons why any such authority by me is inconsistent with the statutory scheme. I think it only a logical extension of my conclusions with respect to my lack of authority to entertain an application for equitable relief of the sort requested that I conclude that the lis pendens is not viable.

There are various pieces of the FIRREA-sought statute, which, without speaking to a lis pendens in so many words, certainly offer direction as to what the principles of the statute are. 12 U.S.C. § 1821(d)(13)(C) states, "No attachment or execution may issue by any court upon assets in the possession of the receiver."

Section 1825(b)(2) tells us that "No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the corporation."

That is statutory language which, at least in its genesis, was clearly aimed at attachments and levies, and so forth, that were supportive of tax collection. But by amendment as of December of last year, the caption references to taxation having been eliminated, and it is at least a plausible argument that that was a legislative direction that the statutory language should be viewed as more comprehensive.

I appreciate that the argument could be made that the failure of the FIRREA sections that I've referred to, or other cognate sections, to refer expressly to lis pendens as a device that is incompatible with the RTC's exercise of its responsibilities means that Congress did not mean to disturb the lis pendens. I think that's a plausible but ultimately unpersuasive argument.

It's hard to imagine that even if Congress could direct its full time to the drafting of a statute of this kind, it could, or it even would, be sensible for it to undertake an encyclopedic reference to every particular device to be found in the argument of every one of our American jurisdictions. Certainly, the lis pendens is cognate with a lien, and the spirit of the statute tells us that the lis pendens, as the marketplace would recognize, would be a significant impediment if it were to remain annexed to the Rebel Hill property.

Basically, I think where I come to rest is that whether or not one is prepared to say that §§ 1821(d)(13)(C) or 1825(b)(2) taken together are statutory directives that oust the lis pendens, the statutory framework taken as a whole is an instruction that this is an area of law in which federal law has ousted state forums and state processes that are incompatible in their operation.

The appropriate case—and I really regard it as controlling precedent here—is the Third Circuit's instruction of last year in *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129 (3d Cir.1991). The very last point addressed by the Third Circuit in that case contained the following discussion:

> "Although SS & R [the law firm Shain, Schaffer and Rafanello,] has a valid retaining lien under New Jersey law, it cannot assert it against the FDIC because federal law has displaced state remedies in this area. SS & R must therefore submit its claim for fees to the

FDIC according to the procedure established by FIRREA. The district court was therefore justified in requiring SS & R to return the files to which SS & R's retaining lien attached."

944 F.2d at 137.

In cognate fashion, I conclude that the lis pendens filed by the defendants against the Rebel Hill property ought to be disallowed.

Friends, I have ruled, I believe, on all of the matters presented for consideration today. I will enter a sequence of written orders simply reflecting conclusorily what has been determined today, for the reasons that I have stated in these rather extended remarks from the Bench.