SPRING GARDEN ASSOCIATES, L.P.

v.

RESOLUTION TRUST CORPORATION, in its capacity as receiver of Bell Federal Savings Bank, PA S.A.; Jay M. Gross; Nathaniel D. Gross; Gary L. Wilson.

Civ. A. No. 93–205.

United States District Court,
E.D. Pennsylvania,
Civil Division.

Aug. 15, 1994.

Order Denying Reconsideration
Sept. 13, 1994.

Francis X. Clark, Esq., King of Prussia, PA, for plaintiff.

Bruce S. Haines, Philadelphia, PA, for defendant.

### MEMORANDUM

BARTLE, District Judge.

This case arises out of the alleged failure of a savings bank, presently in Resolution Trust Corporation ("RTC") receivership, to honor a loan commitment. Currently before the court are RTC's motions to dismiss the case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff, Spring Garden Associates, L.P. ("Spring Garden") filed this action in the Court of Common Pleas of Montgomery County, Pennsylvania against Bell Savings Bank PA S.A. ("Bell") and several of its directors on November 19, 1990. According to the complaint, Bell advanced $5,000,000 of a $9,000,000 ("Loan") to enable Spring Garden to purchase the Packard Press Building in Philadelphia ("Property"). Spring Garden goes on to allege, however, that Bell wrongfully refused to advance the remaining funds needed for renovations. The complaint seeks rescission and damages or, in the alternative, preliminary and permanent injunctive relief to prohibit Bell from foreclosing on the Property. On November 20, 1990, the Court of Common Pleas entered a "Temporary Restraining Order"[1] prohibiting Bell from foreclosing.

Approximately four months after Spring Garden filed suit, the Office of Thrift Supervision ("OTS") appointed RTC as receiver of Bell pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(2)(A). RTC filed a Voluntary Substitution to become a party defendant in January of 1993 and removed the action to this court. Thereafter, RTC filed a motion to vacate the state court injunction, and Spring Garden filed a motion to remand. This court denied the motion to remand and vacated the injunction. The court of appeals recently affirmed. *Spring Garden Associates, L.P. v. Resolution Trust Corp.*, 26 F.3d 412 (3d Cir.1994).

RTC argues that this court lacks subject matter jurisdiction because plaintiff has not filed an administrative claim with the RTC. Spring Garden admittedly has not done so. The RTC contends that under 12 U.S.C. § 1821(d) a claim against a depository institution in receivership must first be filed with the RTC for allowance or disallowance before any court action may be instituted or continued.[2] RTC specifically points to § 1821(d)(13)(D) which states:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which [RTC][3] has been appointed receiver, including assets which [RTC] may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or [RTC] as receiver.

12 U.S.C. § 1821(d)(13)(D).

The RTC's position requiring dismissal for lack of jurisdiction is supported by case law from other circuits. In *Resolution Trust*

---

1. As noted by the Court of Appeals for the Third Circuit, this Order "is more properly termed a preliminary injunction than a temporary restraining order. It was issued upon notice to all parties, following a hearing, and was by its terms, to be in effect for an indefinite period." *Spring Garden Associates, L.P. v. Resolution Trust Corp.*, 26 F.3d 412 (3d Cir.1994), n. 2.

2. This section applies to RTC by application of 12 U.S.C. § 1441a(b)(4).

3. *Id.*

*Corp. v. Mustang Partners,* 946 F.2d 103 (10th Cir.1991) (per curiam), Mustang Partners filed suit against a savings association from which it had received a loan. The RTC subsequently became the receiver of the savings association. The court of appeals affirmed the district court's decision that Mustang Partners' pre-existing lawsuit did not excuse its failure to file an administrative claim. The court of appeals held that Mustang Partners lost its ability to pursue its claim in court because of its failure to file an administrative claim after the RTC was appointed receiver. 946 F.2d at 106. Likewise, the Court of Appeals for the First Circuit has held that "participation in the administrative claims review process [is] mandatory for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver." *Marquis v. Federal Deposit Insurance Corp.,* 965 F.2d 1148, 1151 (1st Cir. 1992). *See also United Bank of Waco, N.A. v. First Republic Bank of Waco, N.A.,* 758 F.Supp. 1166, 1168 (W.D.Tex.1991).

Despite the precedents noted above, this court is bound by the contrary decision of the Court of Appeals for the Third Circuit in *Rosa v. Resolution Trust Corp.,* 938 F.2d 383 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991); *see also Resolution Trust Corp. v. Clarke,* 812 F.Supp. 48 (E.D.Pa.1992). In *Rosa,* the claimants began the lawsuit in federal court against a number of defendants, most of which were in RTC receivership. However, plaintiffs filed suit against one savings bank before RTC's appointment. The court of appeals upheld the district court's continued jurisdiction over the RTC as the successor to that savings bank without the necessity of an administrative proceeding. In doing so, the court stated, "the issue under the [jurisdictional] bar [of 12 U.S.C. § 1821(d)(13)(D) ] is whether, at the time the case came before the district court, RTC had been appointed receiver...." 938 F.2d at 392. While *Rosa* referred to "the time the case came before the *district* court," *id.* (emphasis added), it is clear from the context and from the court's further clarification in footnote 12 that it intended the phrase to be synonymous with

"the time of the filing of the complaint." As the court explained, it is a "firmly established rule that subject matter jurisdiction is tested as of [that time]." *Id.,* fn. 12; *see also St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 293, 58 S.Ct. 586, 592, 82 L.Ed. 845 (1938). In sum, *Rosa* teaches that where a lawsuit was pending in any court against a savings bank before an RTC receivership, the jurisdictional bar of § 1821(d)(13)(D) does not apply. 938 F.2d at 393–94.

In this case, plaintiff filed suit against Bell in the state court some four months before RTC was appointed receiver of Bell. Consequently, Spring Garden need not present its claim administratively before pursuing its claims in this forum. RTC's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure must be denied.

■■■■ RTC also moves to dismiss Spring Garden's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. A complaint should be dismissed on this basis only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). All well pleaded factual allegations in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969).

■■■■ Spring Garden argues that RTC's motion must be treated as one for summary judgment because it "refer[s] to multiple materials outside the pleadings." These documents, the mortgage note and agreement for the Loan and the affidavit filed by Barton Kligerman, one of Spring Garden's general partners, are attached as exhibits to Spring Garden's complaint. So is the commitment letter regarding the Loan on which Spring Garden relies. A court may consider exhibits attached to a complaint without converting a motion to dismiss into a motion for summary judgment. *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993); *Chester County Interme-*

*diate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir.1990). This court finds the other exhibits attached to RTC's motion and Spring Garden's response which were not incorporated into the complaint to be unnecessary for purposes of the present motion. Accordingly, RTC's motion is properly a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

■ Spring Garden alleges in its complaint that Bell initially disbursed $5,000,000 of the Loan to enable Spring Garden to acquire the Property. The parties agree that the mortgage note provides that Bell would advance up to $4,000,000 of additional funds for improvements to the Property if Spring Garden complied with certain conditions. A provision in the mortgage note required Spring Garden to present Bell with executed lease agreements for the Property before requesting additional proceeds. No such leases were ever presented. However, according to Spring Garden's complaint, representatives of Bell orally agreed to waive this condition.

RTC contends that Spring Garden's complaint fails to state a claim under the Supreme Court's oft-cited decision in *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and the decision's statutory progeny, 12 U.S.C. § 1823(e). The *D'Oench, Duhme* doctrine prohibits a borrower from recovering against the Federal Deposit Insurance Corporation ("FDIC") or the RTC based on any "secret agreement" which does not appear in the records of the failed financial institution and which undermines the validity of the borrower's documented obligation to the lender. 315 U.S. at 458–59, 62 S.Ct. at 679–80; *see also Adams v. Madison Realty & Dev., Inc.,* 937 F.2d 845, 852 (3d Cir.1991). Similarly, 12 U.S.C. § 1823(e) provides that:

No agreement which tends to diminish or defeat the interest of the [RTC][4] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [RTC] unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

The federal policy behind both *D'Oench, Duhme* and § 1823(e) is to "allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Langley v. Federal Deposit Ins. Corp.,* 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). Examiners may need to make determinations about the stability of the bank "with great speed ... in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Id.* (citation omitted). This would be impossible if documented loans are subject to unrecorded changes or conditions to repayment which are favorable to the borrower. Without the *D'Oench, Duhme* rule, the condition of the failed institution could potentially be far worse and the obligation of the FDIC or RTC could end up being far greater than appeared on the institution's books and records. The requirement that agreements must be in writing and approved by bank officials serves to "ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Id.* at 92, 108 S.Ct. at 401. The term "agreement" in § 1823(e) includes both express promises between the parties and conditions upon the borrower's obligation to repay. *Id.* at 92, 96, 108 S.Ct. at 401, 403. *See also Federal Deposit Ins. Corp. v. Bathgate,* 27 F.3d 850, 862 (3d Cir.1994).

---

**4.** This section applies to RTC by application of 12     U.S.C. § 1441a(b)(4).

Spring Garden responds that it relies not only on an oral agreement with Bell, but on the Loan commitment letter and the mortgage note themselves. According to Spring Garden, both of these documents "contemplate that [Spring Garden] could receive 'additional funds' from the loan *without* presenting signed leases to Bell." Spring Garden cites § 7(b) of the mortgage note, which states:

> With each advance of [Loan proceeds in excess of the original $5,000,000] ... [Bell] shall establish a Common Area Reserve, to be disbursed by [Bell] to [Spring Garden] to fund improvements to the common area portions of the [Property] in accordance with the procedures and requirements of Section 3(f)(ii).

One of the "requirements" of Section 3(f)(ii) is that Spring Garden must present satisfactory lease agreements "for 10,000 or more square feet of space" before being eligible to receive any additional proceeds. This language is fatal to Spring Garden's position.

Spring Garden further argues that the commitment letter for the Loan demonstrates that Bell breached its alleged obligation to fund the Loan despite Spring Garden's failure to produce lease agreements. The commitment letter states that:

> Subject to our review and approval in advance, we will advance, once each month, on vouchers approved by our engineer or inspector and substantiated by invoices from the general contractor or subcontractors and suppliers, the cost of the tenant improvements, not to exceed the amount shown on the approved cost breakdowns.

As RTC notes, however, the commitment letter also states that "[a] conditional assignment of all rents, income, leases and, management/and [sic] maintenance contracts shall be required." That the commitment letter provides for advances for the cost of "tenant improvements" also presupposes that Spring Garden has obtained tenants.

There is nothing in Bell's records to establish that Spring Garden was relieved from presenting signed leases as a precondition to further funding. *See Bathgate,* 27 F.3d at 864–65. Spring Garden's claims are barred therefore by the *D'Oench, Duhme* doctrine

and § 1823(e). As Spring Garden's claims must be dismissed for failing to state a claim for relief, it is unnecessary to consider RTC's remaining arguments.

### *ORDER*

AND NOW, this 15th day of August, 1994, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant, Resolution Trust Corporation, to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is DENIED.

It is further ORDERED that the motion of defendant to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.

### *MEMORANDUM AND ORDER*

AND NOW, this 13th day of September, 1994, it is hereby ORDERED that the motion of plaintiff, Spring Garden Associates, L.P. for reconsideration of the Order dated August 15, 1994 is DENIED.

Plaintiff's complaint did not allege or rely on any written agreement other than the commitment letter and the mortgage note. Therefore, the existence of any agreements in the bank's records is entirely irrelevant to the legal sufficiency of plaintiff's claims. Furthermore, plaintiff's request for discovery is untimely. Even if it would have been appropriate to consider defendant Resolution Trust Corporation's motion as a motion for summary judgment, plaintiff failed to follow the procedures required by Rule 56(f) of the Federal Rules of Civil Procedure for requesting discovery in order to respond.

This Court held that the commitment letter does not constitute a written agreement excusing plaintiff from producing the signed lease agreements specifically required by the mortgage note as a prerequisite for obtaining additional financing. Plaintiff's argument that it satisfied the conditions of the commitment letter does not alter this conclusion.