**RESOLUTION TRUST CORPORATION, as Receiver for Nassau Savings and Loan Association and as Receiver for Nassau Federal Savings and Loan Association**

v.

**James J. KOLEA, John J. Kolea, and Cross County Corporation.**

**Civ. No. 90–6287.**

United States District Court, E.D. Pennsylvania.

Oct. 12, 1994.

Leonard P. Goldberger, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Resolution Trust Corp., as Receiver for Nassau Sav. and Loan Ass'n and as Conservator and receiver for Nassau Federal Sav. and Loan Ass'n.

David A. Koss, Wynnewood, PA, for James J. Kolea, John J. Kolea, Cross County Corp.

*OPINION*

LOUIS H. POLLAK, District Judge.

The plaintiff, the Resolution Trust Corporation (RTC), has filed a motion with two objectives: (1) dismissal of the counterclaim of the defendants—James J. Kolea, his brother John J. Kolea, and their construction company, Cross County Corporation (hereinafter "the Koleas")—for lack of subject-matter jurisdiction, and (2) partial summary judgment precluding the defendants from relying on written alterations to the loan agreement that serves as the predicate of this suit. For the reasons that follow, the counterclaim shall be dismissed and partial summary judgment shall be granted.

**Background**

This suit was filed in September 1990. At that time, the RTC was the receiver of Nassau Savings and Loan Association ("Old Nassau") and the conservator of Nassau Federal Savings and Loan Association ("New Nassau"). Approximately one year later, the RTC was appointed receiver of New Nassau as well.

The suit involves a townhouse construction project that, during the mid–1980's, was being developed by Gulph Woods Corporation on a site in Montgomery County known as "Rebel Hill." This development has been the subject of much litigation, *see, e.g., Trinsey v. K. Hovnanian at Upper Merion, Inc.*, 841 F.Supp. 694 (E.D.Pa.1994); *Trinsey v. K. Hovnanian at Upper Merion, Inc.*, Civ. No. 93–1695, 1993 WL 313510 (E.D.Pa. July 28, 1993); *RTC v. Clarke*, No. 90–7758, 1992 WL 111139 (E.D.Pa. May 11, 1992), and I shall therefore only briefly touch on the surrounding facts. Old Nassau agreed to lend money to Gulph Woods to fund the development, and eventually filed suit when Gulph Woods defaulted. As part of the settlement of that litigation, the Koleas—who were not parties to the litigation, but who did participate in, and agree to, the court-approved settlement agreement—undertook certain obligations. This settlement is set forth both in a transcript of the proceedings before my colleague, Judge Norma L. Shapiro, and in a written stipulation signed by the parties to that litigation but not signed by the Koleas.[1] *See* Exhibit C attached to the RTC's Memorandum in Support (docket no. 9); Exhibit K attached to the Koleas' Memorandum in Opposition (docket no. 10). This settlement agreement is referred to by the parties, and will be referred to by me, as the "May 30 agreement." The RTC's allegation that the Koleas failed to satisfy their obligations under the May 30 agreement, and the Koleas' counter-allegations regarding Old and New Nassaus' obligations under the same agreement, form the core of the present dispute.

---

1. Although one might question reliance on a stipulation to which the Koleas were not signatories, it has been entered into the record by the Koleas rather than by the RTC. There also appears to be a dispute between the parties whether the transcript or the stipulation or both correctly describe the terms of the settlement agreement. I need not address that issue at this juncture, in any event.

The Koleas' allegations are contained in counterclaims filed with their answer. The RTC filed the instant motion in late 1991, seeking, *inter alia*, to have the counterclaims dismissed because the Koleas had failed to exhaust the RTC's administrative claims proceedings, as required by 12 U.S.C. § 1821(d)(13)(D). On February 26, 1992, I held a hearing on the motion, and ruled from the bench that (1) the motion to dismiss the counterclaim against the RTC as receiver for Old Nassau for lack of subject-matter jurisdiction was granted and (2) the motion to dismiss the counterclaim against the RTC as conservator for New Nassau was denied: the difference in disposition resulted from the fact that, under applicable Third Circuit precedent, the jurisdictional exhaustion requirement appeared to apply differently to legal proceedings filed pre- and post-receivership.[2] I reserved judgment on the portion of the RTC's motion that sought partial summary judgment. This ruling was memorialized in an order of March 2, 1992. Docket No. 17. Shortly thereafter, the parties entered into a stipulation—which was, upon my approval, transformed into an order, *see* Docket No. 18—that held the counterclaim in abeyance pending a determination of the solvency of the receivership of New Nassau (*i.e.*, a determination whether sufficient funds remained in New Nassau to satisfy any potential judgment in the Koleas' favor on the counterclaim).

The case returned to life in March of this year, when the parties notified me that the solvency determination had been made, and, accordingly, I entered a scheduling order. The parties have now filed pretrial memoranda, and, pursuant to an order I entered in connection with the pretrial conference held on June 28, 1994, they have also filed supplemental memoranda on the pending motion. Although the RTC has not filed a new motion to dismiss, both parties appear to be operating under the assumption that, because the earlier motion to dismiss was apparently denied without prejudice, it has somehow been

renewed. This memorandum conforms to that assumption.

## DISCUSSION

### *Subject-matter Jurisdiction over the Counterclaim*

The crux of the motion to dismiss is the failure of the Koleas to file their claim against the RTC as receiver for New Nassau in the RTC's administrative claims process. The Koleas do not dispute that they have not filed an administrative claim, nor do they assert that they did not receive notice of the claims process. Rather, the Koleas assert that, at least in the Third Circuit, claims filed prior to New Nassau's entry into receivership are not subject to the jurisdictional exhaustion requirement found in the governing statute, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). *See* 12 U.S.C. § 1821(d)(13)(D).

I had occasion to address this question—albeit in a somewhat different context—in a related case. *See RTC v. Clarke*, 812 F.Supp. 48, 50–51 (E.D.Pa.1992). In *Clarke*, I denied the RTC's motion to dismiss a similar, pre-receivership counterclaim, but granted the RTC's alternative motion to stay the litigation pending exhaustion of the administrative proceedings. In so deciding, I noted that the Third and Tenth Circuits had reached somewhat different views on the issue of dismissal in decisions which were virtually contemporaneous. *See RTC v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991); *Rosa v. RTC*, 938 F.2d 383, 392 & n. 12 (3d Cir.), *cert. denied*, 502 U.S. 981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). Although the court in *Mustang Partners* held that pending pre-receivership claims must be dismissed and then refiled after the administrative proceedings have been exhausted, the Third Circuit in *Rosa* held that dismissal of such claims is not required by the statute. Since the rulings in *Rosa* and *Mustang Partners*, several other circuits have ruled on the issue, and the majority of those to have addressed the question have agreed with the

---

**2.** The RTC was appointed the receiver of Old Nassau on March 8, 1990, and of New Nassau on August 23, 1991. The filing date of the counterclaims—the controlling date, as I read *Rosa v.*

*RTC*, 938 F.2d 383, 392 n. 12 (3d Cir.), *cert. denied*, 502 U.S. 981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991); *see RTC v. Clarke*, 812 F.Supp. 48, 51 (E.D.Pa.1992)—is November 13, 1990.

Third Circuit's decision in *Rosa.* *See, e.g., Carney v. RTC,* 19 F.3d 950, 955–56 (5th Cir.1994); *Brady Dev. Co. v. RTC,* 14 F.3d 998, 1005–06 (4th Cir.1994); *Marquis v. FDIC,* 965 F.2d 1148, 1151 (1st Cir.1992).

In *Rosa,* the Third Circuit did not have occasion to address the next question, which is whether, although not subject to peremptory dismissal, such claims are nonetheless subject to an exhaustion requirement. Several circuits have held that although pre-receivership claims need not be dismissed, district courts should stay such cases to allow the RTC to consider the claims administratively. *See, e.g., Carney,* 19 F.3d at 955–56; *Brady,* 14 F.3d at 1003–04; *Marquis,* 965 F.2d at 1154–55. The Third Circuit has expressly "express[ed] no position" on such stays. *Praxis Properties, Inc. v. Colonial Savings Bank, S.L.A.,* 947 F.2d 49, 64 n. 14 (3d Cir.1991). In *Clarke*—as noted earlier— I denied the RTC's motion to dismiss a counterclaim filed before the RTC's appointment as receiver, but I granted the RTC's alternative motion for a 180–day stay to permit the counterclaimants to pursue their administrative remedy. In so ruling, I did not mention (very likely because my research was incomplete) the Third Circuit's stated expression of "no position" in *Praxis* on the propriety of such stays. It may be that I would have granted such a stay here as well, if the Koleas had ever undertaken to file their claim with the RTC for administrative processing.

The question I must face because of the Koleas' failure to pursue the administrative remedy [3] is whether, when a pre-receivership claimant which is notified of the claims process nonetheless fails to exhaust that process, I may yet exercise jurisdiction over its claim. Three of the circuit courts that have addressed this problem have held that district courts may not exercise jurisdiction over such claims. *See Brady,* 14 F.3d at 1006; *Bueford v. RTC,* 991 F.2d 481, 485 (8th Cir.

1993); *Marquis,* 965 F.2d at 1151–52. The Fifth Circuit has recently taken a slightly different approach to the issue in *Whatley v. RTC,* 32 F.3d 905 (5th Cir.1994), apparently holding that the exhaustion requirement only applies to such claims when the RTC requests a stay of the judicial proceedings. And the problem has divided my two fellow judges in the Eastern District who have had occasion to address it. *See Spring Garden Assocs., L.P. v. RTC,* 860 F.Supp. 1070, at 1072–73 (E.D.Pa.1994) (Bartle, J., holding that, pursuant to *Rosa,* a pre-receivership claimant "need not present its claim administratively before pursuing its claims in this forum"); *W.W. Dev. & Mgmt. Co. v. RTC,* Civ. No. 93–4210, 1994 WL 376921, at *2 & n. 2 (E.D.Pa. July 15, 1994) (Gawthrop, J., noting that the claimant "concede[d] that where the RTC's only notice of a claim is through pre-receivership litigation, the claimant must file an administrative claim," and agreeing that "where a claimant has failed to file, or has filed a claim in an untimely manner, which claim the RTC has disallowed, this court lacks jurisdiction").

I do not believe that *Rosa* supplies a complete answer to this question. *Rosa* only gets one past the peremptory dismissal sought by the RTC in that case; it does not preclude a district court from requiring that a pre-receivership claimant subject its claim—within the time limit imposed by the RTC, *see Althouse v. RTC,* 969 F.2d 1544 (3d Cir.1992)—to the RTC's administrative claims process before the judicial proceedings may continue post-receivership. Neither in *Rosa* nor in *Praxis* did the Third Circuit address the possibility that, although peremptory dismissal is not required, exhaustion is required.

The reasoning of the First Circuit in *Marquis* and the Fourth Circuit in *Brady* is compelling. *Brady,* relying on *Marquis,* held that when a pre-receivership claimant has notice of the administrative claims pro-

---

3. The time during which the Koleas could have filed such a claim is long past. FIRREA requires a minimum of a ninety-day filing period, which is precisely what the RTC provided when it was appointed receiver of New Nassau. Although the RTC's appointment as receiver occurred on August 23, 1991, the first notice of the claims pro-

cess was not published until August 28, 1991, and the stated deadline was ninety days later on November 26, 1991. *See* Exhibit A to RTC's Reply Br. (docket no. 12) (copy of notice of claims process sent to Trenton newspaper for publication).

ceeding but nonetheless fails to avail itself of that proceeding, the district court is without subject-matter jurisdiction to entertain the claim. 14 F.3d at 1005–06. Chief Judge Ervin reasoned that although FIRREA allows a claimant to " 'continue an action commenced before the appointment of the receiver,' " *id.* at 1003 (quoting 12 U.S.C. § 1821(d)(6)(A))—thereby placing the Fourth Circuit with the First and Third Circuits in holding that pre-receivership claims need not be peremptorily dismissed—such claims must nonetheless be presented to the administrative process before they may be passed on by a district court. *Id.* at 1006. In so holding, Judge Ervin observed that

> permitting such actions to go forward would thwart FIRREA's purposes and permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute.... Judicial review of claims before an administrative review by the RTC would render the administrative scheme established [by FIRREA] meaningless because creditors essentially could opt out of the administrative review. Creditors must avail themselves of the statute in order to receive its benefits.

*Id.* (citation omitted).

Despite the persuasive force of the *Brady* and *Marquis* decisions, the Fifth Circuit has—apparently—reached a contrary conclusion. *See Whatley*, 32 F.3d at 909–11 (noting disagreement). Prior to *Whatley*, the Fifth Circuit appeared to be on pace to join the First and Fourth Circuits (as well as, for different reasons, the Eighth and Tenth Circuits) in holding that pre-receivership claims must be exhausted administratively before they may be pursued in judicial proceedings. In *Carney*, the Fifth Circuit joined the First and Fourth Circuits in requiring that cases involving pre-receivership claims be stayed, rather than dismissed, so that the RTC may process such claims administratively. 19 F.3d at 955–56. *Carney* makes no mention of a requirement that the RTC seek such a stay in order for the exhaustion requirement to apply, but that appears to have been the

holding by the Fifth Circuit last month in *Whatley*. Because *Whatley* cannot be reconciled with *Marquis* and *Brady*, I must decide which of the two approaches is more in harmony with *Rosa*.

■ To understand the holding in *Whatley*, it is necessary to first discuss the sources of authority for staying proceedings that involve the RTC as receiver. 12 U.S.C. § 1821(d)(12) authorizes the RTC to seek a 90–day stay in a pending case involving an institution for which it has been appointed receiver.[4] Subsection (d)(12) is the only provision in FIRREA that expressly authorizes pending judicial proceedings to be stayed. Nonetheless, most of the courts that have addressed the question have found that a second type of stay not only can be inferred from FIRREA, but is, in fact, mandatory.

■ The second type of stay is for up to 180 days, and is considered to be mandatory whenever a claimant whose suit is pending when the RTC enters the picture as receiver (rather than as conservator) files his or her claim with the administrative claims process. The 180 days corresponds to the amount of time in which the RTC may consider such claims, *see* 12 U.S.C. § 1821(d)(5)(A)(i), and the mandatory nature of the stay results from an attempt to reconcile the statutory language allowing such suits to "continue," *see id.* § 1821(d)(6)(A)—and thereby not be dismissed—with the prohibition on dual jurisdiction courts have gleaned from the statute and its legislative history. *See Brady*, 14 F.3d at 1005 n. 1, 1006; *see also Carney*, 19 F.3d at 955–56. It is this second type of stay that I granted in *Clarke*, 812 F.Supp. at 52, and on which the Third Circuit has "express[ed] no position." *Praxis*, 947 F.2d at 64 n. 14.

Despite the Fifth Circuit's recognition of the second type of stay in *Carney*, the *Whatley* court only recognized the existence of the first type of stay. In its attempt to reconcile the various conflicting provisions of FIRREA, the *Whatley* court ruled that because

---

4. Subsection (d)(12) also authorizes the RTC to seek a 45–day stay in a pending case involving an institution for which it has been appointed conservator. This type of stay is not relevant to the question before me, however, because the exhaustion requirement only applies to claims against institutions that have been placed in receivership (as opposed to conservatorship).

FIRREA only expressly authorizes the first type of stay, which must be requested by the RTC and which the RTC is not obligated to request, the onus rests firmly on the RTC in cases involving pre-receivership claims. In other words, if the RTC requests a stay under § 1821(d)(12),[5] then the administrative proceeding may (and, presumably, must) proceed; if the RTC makes no such request, however, it is not then entitled to have the claim dismissed because of the claimant's failure to exhaust the administrative remedy.

The facts of *Whatley* are such that I am not entirely certain the Fifth Circuit intended a holding of general applicability. The claimants in *Whatley* never received notice by mail of the administrative claims process as required by FIRREA, and it is unclear to what extent the holding in *Whatley* depends on this fact. Judge Duhe's concurrence, *see* 32 F.3d, at 909–11 (Duhe, J., concurring), and his subsequent opinion in *Greater Slidell Auto Auction, Inc. v. American Bank & Trust Co.,* 32 F.3d 939 (5th Cir.1994), rely exclusively on the lack of notice as a basis for denying the RTC's motion to dismiss. As I noted earlier, *see supra* at 200, the Koleas have not asserted that they did not receive notice of the administrative claims process. If there were an absence of notice in this case, the course taken by Judge Duhe would appear to be warranted.

■ In any event, if the holding in *Whatley* is intended to apply generally, I do not find it persuasive. Rather, I conclude—largely for the reasons explicated in *Marquis* and *Brady*—that a litigant pressing a claim against a savings and loan institution who is notified of (1) the appointment of the RTC as receiver of the institution, and (2) the pertinent RTC administrative processes for review of claims and the time period within which a pending claim should be submitted to the RTC, is then obligated to submit to the administrative claims process within the prescribed time period on pain of dismissal of the judicial claim by the court in which it was filed. As long as the litigant receives the necessary notice, the RTC cannot be considered guilty, in the words of *Whatley,* of "sandbagging." 32 F.3d at 909–11. Once the administrative claim is filed, a stay of up to 180 days is, in my view, authorized by FIRREA, whether it is requested by one of the parties or is done on the court's own initiative.[6] Such a reading of the statute seems most true to the statutory scheme and does not require that the burden be shifted to the RTC to seek exhaustion of the administrative proceedings, as does the holding in *Whatley* (if applied generally). Congress clearly intended that such claims be subject to administrative review, and a holding to the contrary would allow "[a]ny claimant ... to bypass the submission of a claim to the RTC simply by ignoring the deadline in the notice to creditors." *Althouse,* 969 F.2d at 1546.

■ Accordingly, the Koleas counterclaim against the RTC as the receiver of New Nassau shall be dismissed. FIRREA requires that such claims be submitted to the RTC's administrative claims process, and the failure of the Koleas to comply with this provision of FIRREA has divested me of subject-matter jurisdiction over their claim.[7]

---

5. Although such stays are only authorized for up to 90 days, it seems not unlikely that the *Whatley* court would join the First Circuit in *Marquis* in holding that FIRREA does not preclude courts from extending such stays to 180 days to allow for the administrative claims process to be completed. *See Marquis,* 965 F.2d at 1154–55; *see also infra* n. 6.

6. Assuming, as will likely be the case, it is the RTC that requests the stay, it may not be necessary to infer a stay in addition to that provided in § 1821(d)(12)(A)(ii). Although that stay is only for ninety days, *Marquis* held that such stays could be extended to allow the conclusion of either the administrative proceeding itself or the 180–day period allowed by § 1821(d)(5)(A)(i). The two different types of stays will, in certain cases, serve different purposes, however, as noted by both the Third Circuit in *Praxis,* 947 F.2d at 64 n. 12, and by the Fourth Circuit in *Brady,* 14 F.3d at 1003–05, and I maintain, as I did in *Clarke,* 812 F.Supp. at 52, that authority exists—either in FIRREA or inherently within the judiciary—for the 180–day stay independent of (12)(A)(ii).

7. The Koleas have not contended, as did the claimant in Judge Gawthrop's recent decision in *W.W. Development & Management Co. v. RTC,* Civ. No. 93–4210, 1994 WL 376921 (E.D.Pa. July 15, 1994), that the filings in this suit should be treated as having satisfied the statutory requirements for placing a claim before the RTC for administrative processing. Accordingly, I need not address that question.

### The D'Oench Duhme *Doctrine*

In addition to moving to dismiss the counterclaim for lack of subject-matter jurisdiction, the RTC moves for partial summary judgment on the Koleas' defenses involving alleged oral and written modifications to the settlement agreement. Under the rule announced in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 460–62, 62 S.Ct. 676, 680–82, 86 L.Ed. 956 (1942)—which was "essentially" codified in 12 U.S.C. § 1823(e)[8] and on which the RTC is allowed to rely, *see Adams v. Madison Realty & Dev., Inc.,* 937 F.2d 845, 852 (3d Cir.1991)—"no agreement between a borrower and a bank which does not plainly appear on the face of an obligation or in the bank's official records is enforceable against the [RTC]." *Id.*[9]

The Third Circuit, borrowing from the Fifth Circuit, has explained the purpose behind the doctrine:

"Fundamentally, *D'Oench* attempts to ensure that FDIC examiners can accurately assess the condition of a bank based on its books. The doctrine means that government has no duty to compile oral histories of the bank's customers and loan officers. Nor must the FDIC retain linguists and cryptologists to tease out the meaning of facially-unencumbered notes. Spreadsheet experts need not be joined by historians, soothsayers, and spiritualists in a Lewis Carroll-like search for a bank's unrecorded liabilities."

*RTC v. Daddona,* 9 F.3d 312, 319 (3d Cir. 1993) (quoting *Bowen v. FDIC,* 915 F.2d 1013, 1016 (5th Cir.1990)). In order to further the purpose of the doctrine, the Third Circuit recently held that for an agreement to be "in writing" for purposes of *D'Oench Duhme* "not only does the existence of the agreement have to appear plainly on the face of an obligation, but the basic structure of that agreement—its essential terms—must also appear plainly on the face of that obligation." *Id.*

The agreements at issue here are three letters written on Old Nassau stationery to various parties, which, in some cases included signature lines for additional parties: (1) a letter addressed to Upper Merion Township (which encompasses the Rebel Hill development) on September 10, 1986, and executed by the Township and the Koleas on October 30 and 31, 1986; (2) a letter addressed to the Township on October 22, 1986, and executed by the Township on the same date; and (3) a letter addressed to the Koleas on October 14, 1986, and executed by them on October 15, 1986. *See* Exhibits G–I in the RTC's Appendix. The Koleas argue that these letters alter the terms of the loan agreement—in ways it is unnecessary to detail, but which allegedly modified both the Koleas' and Old Nassau's obligations under the May 30 agreement[10]—and they therefore intend to

---

**8.** Section 1823(e) provides that

[n]o agreement which tends to diminish or defeat the interest of the [Federal Deposit Insurance] Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

**9.** The Koleas agree that any oral agreements are barred by the *D'Oench Duhme* doctrine, as the Third Circuit has made clear, *see, e.g., FDIC v. Bathgate,* 27 F.3d 850, 862 (3d Cir.1994) (stating that the *D'Oench Duhme* doctrine bars defenses based on oral agreements), so the following is addressed only to certain writings that, in the Koleas' view, memorialized the oral agreements previously entered into by the Koleas and Old Nassau.

**10.** According to the Koleas, the letters written to the Township (to which the third letter was ancillary) were intended to assure the Township that the project would continue. In accord therewith, Old Nassau intended—again, according to the Koleas—(1) to waive the obligation imposed on the Koleas by the May 30 agreement to obtain financing that would allow Gulph Woods to pay off the loan to Old Nassau by October 1, 1986, and (2) to modify the May 30 agreement by providing that it (Old Nassau) would continue to fund the development after the October 1 dead-

rely on them in defending this suit. The RTC argues that these letters do not survive the *D'Oench Duhme* doctrine as it has been defined by the Third Circuit.[11]

In *Daddona* and, even more recently, in *FDIC v. Bathgate*, 27 F.3d 850 (3d Cir.1994), the Third Circuit has addressed this issue in cases analogous to the case at bar. On both occasions, the court found that letters which purportedly altered the terms of loan agreements could not be relied upon by litigants to the detriment of the RTC because the evidence of the alleged modifications, while arguably effective against the bank, did not conform to the strict requirements of *D'Oench Duhme* and § 1823(e).

In *Daddona*, "the writings presented by defendants provide[d] *no* terms of an additional agreement between [the bank] and the [borrower], much less terms sufficient to constitute the basic structure of the agreement." 9 F.3d at 320 (emphasis in original). In *Bathgate*, the problem was not that the writings failed to evidence an *intent* either to enter into a new agreement or to modify the existing agreement, but that the writings did not, on their face, *obligate* the bank to do so in a manner that would be apparent to the bank examiners. *See* 27 F.3d at 863.

Both *Daddona* and *Bathgate* looked for support to an Eleventh Circuit decision, *FSLIC v. Two Rivers Associates, Inc.*, 880 F.2d 1267 (11th Cir.1989), that closely parallels the facts of this case. *See Bathgate*, 27 F.3d at 864–65; *Daddona*, 9 F.3d at 319. In *Two Rivers*, as summarized by the court in *Bathgate*, the defendant

> claimed that the savings and loan had breached an agreement to provide it with additional funds. According to the defendant, the savings and loan agreed to fund an entire development project, but refused to advance further funds after funding only part of the project. The Court of Appeals for the Eleventh Circuit held that the de-

fendant was barred from asserting a defense based on the breach of an agreement to fund the entire development project because the written provisions in the loan agreements "at most reflect[ed] that [the savings and loan] ... intended to loan additional funds, [and] ... fell far short of establishing that [the savings and loan] ... was *obligated* to fund the entire project." "At no point in the many different documents evidencing the loans at issue ... [was] there an explicit acceptance of the obligation to fund the entire project." Thus, *D'Oench Duhme* barred the defendant's defense of breach of agreement because the FSLIC was not "put on notice of any agreement that ... [the savings and loan] was obligated to fund the entire project."

*Bathgate*, 27 F.3d at 864 (quoting *Two Rivers*, 880 F.2d at 1276) (citations omitted and alterations as in *Bathgate* ). Similarly, *Bathgate* held that the letter at issue in that case did not put the FDIC on notice either that the bank's preparation of certain documents (which it had agreed to prepare) was a condition precedent to performance of the Bathgate defendants' obligations under the existing loan agreement or that the bank was obligated to provide the additional loan. *Id.* at 864–65.

■ *Bathgate, Daddona,* and *Two Rivers* require that the letters on which the Koleas intend to rely clearly set forth the terms of the alleged new agreement and clearly manifest that Old Nassau or New Nassau not only intended to advance additional funds, but was obligated to do so. Although one might infer such an intent from the letters, no such inference is compelled, and the *D'Oench Duhme* doctrine bars reliance on documents from which one might infer—but also might not infer—the existence of a new or altered agreement. Accordingly, the RTC's motion for partial summary judgment, precluding the Koleas from

---

line. The Koleas assert that they were third-party beneficiaries of these assurances to the Township.

**11.** The RTC also raises an argument that the Koleas should not be allowed to rely on the documents under the standard principles of contract construction found in the law of Pennsylva-

nia. My decision on the *D'Oench Duhme* doctrine obviates the need for me to address either this issue, or the preliminary issue of whether Pennsylvania law or federal common law provides the basis for construing such contracts in this context. *See Daddona*, 9 F.3d at 318–19.

relying on the letters at issue, shall also be granted.